IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MARTHA WELLMAN and
CHARLES WELLMAN,

                  Plaintiffs,

v.                                        CIVIL ACTION NO. 3:10-0147

BOBCAT OIL & GAS, INC.,

                  Defendant.

**MEMORANDUM OPINION AND ORDER**

In an Order dated December 20, 2011, the Court ordered supplemental briefing on the limited issue of whether any late or missing payments made after the year 2007 caused the lease to terminate. ECF No. 250. Briefing on this issue is now complete. As described below, the Court finds that Plaintiffs have not put forth any evidence that payments made after 2007 are late or missing, and therefore the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 208).

**I.    Background**

The facts of this case are recited in this Court's December 21, 2011 Memorandum Opinion and Order (ECF No. 251). In short, Plaintiffs Charles and Martha Wellman own a mineral estate in Wayne County, West Virginia. The right to extract minerals from that estate has been leased by Defendant Bobcat Gas & Oil since 1993. The applicable lease provides for a quarterly, flat-rate royalty payment of $75. In 2010, Plaintiffs filed suit in this court claiming that Defendant breached, and therefore terminated, the lease. Plaintiffs advanced two theories: first, that Defendant breached

the lease through failing to produce gas from the mineral estate for some period, and second, that Defendant breached the lease by failing to make the required quarterly royalty payments. The Court granted partial summary judgment for Defendant on the non-production claim, and on Plaintiffs' claims based on payment defects before or during 2007. ECF No. 251. The lone remaining issue is, therefore, whether Defendant may have breached the lease through late or non-payment of royalties due after 2007. The Court ordered supplemental briefing on this issue (ECF No. 250), and now considers whether to grant Defendant's Motion for Summary Judgment (ECF No. 208) on Plaintiffs' remaining claims.

**II.     Standard**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving

party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

**III. Analysis**

In their previous pleadings, Plaintiffs argued that quarterly royalty payments are due on January, April, July, and October 29 of each year. Although the Court does not here decide whether these dates are terms of the lease, both parties have used them to calculate the timeliness of the payments for the purposes of this supplemental briefing.[1] Using these dates for reference, the parties have submitted charts indicating when quarterly royalty checks for 2008-2012 have been due, written, and received. *See* Pl. Supp. Resp. in Opp., ECF No. 252, Exs. 2-3; Defs.' Reply to Pl. Supp. Resp. in Opp., ECF No. 253, Exs. 1-2. It is undisputed that Plaintiffs decided not to cash any of these royalty checks, and so the only evidence of their issue or timeliness is provided by Defendant's check register, and, for some payments, certified mail records. Plaintiffs apparently kept no records, of the checks, nor have they offered any evidence as to when they received the checks.

Plaintiffs argue that all payments for the relevant period are at least five quarters late, because payments due in prior years were late or missing. This Court's December 21 Order foreclosed any consideration of the timeliness of payments due before 2008 and this argument must, therefore, fail. ECF No. 251.

However, Plaintiffs also allege delinquencies in payments due after 2007. The Court will therefore examine payments beginning with the payment due—according to both parties—on January 29, 2008. The parties' payment charts agree that this first quarter 2008 payment was due

---

[1] To the extent that Defendant has agreed to this timetable for the purposes of argument, the Court will not, as Plaintiffs urge, consider this a changed or inconsistent position to Defendant's detriment.

in January 29, 2008 and sent on November 27, 2007, by certified mail. *See* ECF No. 253, Ex. 1; ECF No. 252, Ex. 3. The parties disagree about all later payments.

The next check appears in Defendant's check register for the date of March 27, 2008. According to Defendant, this check was both issued and mailed around that date. Plaintiffs' chart indicates that this March 27 check was not mailed until July 2008, when it was mailed by certified mail. Defendant disagrees. Per Defendant's check register, a separate check was issued, and sent by certified mail, in July 2008. Defendant explains that this check was issued with an incorrect date—December 1, 2007. This check was returned by USPS, then re-sent. Plaintiffs do not explain what they believe actually happened to the checks issued in March and July of 2008, but simply list the check issued March 27 as corresponding to the July 2008 certified mailing. By this math the March 2008 and all subsequent payments are at least one quarter late. However, this version of events has no basis in fact.

First, it is undisputed that Martha Wellman signed for a certified mailing from Defendant on July 23, 2008. Additionally, Defendant's check register indicates that separate checks were issued in both March and July of 2008, for the second and third quarters of 2008. Defendant also provides an affidavit by Mary Young, the office manager, who avers that a check for the third quarter of 2008 was issued and sent in June or July of 2008.

In an attempt to create a factual dispute, Plaintiffs point to an assertion by Mary Young, Defendant's office manager beginning in January 2008, that Defendant sent its payments to the Wellmans by certified mail. *See* ECF No. 256, Ex. 1, at 133 (Mary Young 8/29/11 Dep.). Therefore, Plaintiffs reason, since there is no record the March 2008 payment was sent by certified mail, it must not have been sent at all.

-4-

However, Plaintiffs' inference is undermined by Defendant's direct evidence, including an affidavit by Mary Young, that Defendant did not send all payments to the Wellmans via certified mail until mid-2008.  ECF No. 253, Ex. 3 (Young Affidavit); Ex. 4 (letter to Plaintiffs from Defendant); *see also* ECF No. 256, Ex. 3, at 161(Tuck Dep.) (stating Defendant only sent royalty checks by certified mail once a recipient stopped cashing checks).  Further, there is no indication that royalty payments were ever sent to Plaintiffs by certified mail before the November 2007 payment.[2]  One general statement by Mary Young, later clarified by her affidavit and other deposition testimony about Defendant's mailing practices, is insufficient to support a conclusion that because there is no evidence a check was sent by certified mail, the check was never sent at all.

Therefore, although Plaintiffs attempt to create a contested issue of fact, the only direct evidence of the March check—its presence in Bobcat's check register— indicates it was produced and sent when dated.  *See* ECF No. 253, Ex. 2.  Contradictory and vague deposition testimony about Defendant's certified mail practices does not give rise to a disputed issue of fact.

This determination regarding the March 2008 check also resolves Plaintiffs' complaints about the remaining royalty payments due beginning in 2008.  Plaintiffs assert these payments are uniformly late because the March 2008 check was late, pushing all subsequent checks into late status.

Plaintiffs do not dispute that Defendant issued a $75 royalty check on the following fourteen dates:  09/01/2008; 12/17/2008; 3/23/2009; 6/15/2009; 9/18/2009; 12/20/2009; 3/26/2010;

---

[2] That mailing contained, along with the check, a note to Plaintiffs instructing them on how to terminate their lease with Defendant, written by Defendant's previous office manager, who quit suddenly in December of 2007.

-5-

6/17/2010; 9/27/2010; 12/22/2010; 3/24/2011; 6/25/2011; 9/27/2011; 12/12/2011.[3] Plaintiffs also do not dispute that Martha Wellman signed for the certified delivery of a royalty check on the following fourteen dates: 9/03/2008; 1/23/2009; 3/27/2009 (no certified mail record); 6/25/2009; 9/24/2009; 12/23/2009; 4/22/2010; 6/18/2010; 10/01/2010; 01/03/2011; 3/29/2011; 6/30/2011; 9/29/2011; 12/14/2011. *See* ECF No. 252, Exs. 2-3; ECF No. 253, Exs. 1-2.

For each of these fourteen checks, then, there is no dispute that a check was issued, and that delivery of a check was accepted by Martha Wellman shortly after the check was issued. Plaintiffs, however, urge the Court that each delivered check was not the check issued, in most cases, just a few days before the delivery—but rather the check issued *before* that. Such math is built on the assumption that the March 27 check was issued late and delivered in July 2008, putting all subsequent royalty payments behind by at least one month. The Court has rejected the argument that the March 2008 check was late, and therefore also rejects the argument that the subsequent payments are late.[4] Plaintiffs' strained interpretation of the payments, in which Defendant sat on each check until a more timely one was issued, then sent the later check instead of the check dated immediately before the receipt date, has no apparent basis in fact.[5]

Last, the Court notes that even if Plaintiffs could put forth some evidence that the March 2008 payment was never issued or sent, it is highly doubtful that one missed payment under these

---

[3] Plaintiffs' chart does not clearly indicate Plaintiffs' position as to the date and receipt of the last check in this series.

[4] Defendant's characterization of the payments as timely is also supported by Defendant's certified mail records, which indicate, beginning in 2009, which quarter each mailed payment was meant to cover. ECF No. 253, Ex. 2.

[5] Even if the March 2008 payment were not timely, the Court would not consider all other payments late as a consequence. The more rational approach would be to consider whether one missing payment, in March 2008, would itself constitute an actionable breach of the lease.

circumstances would be sufficient to terminate the lease. Although the Court need not decide this issue, it notes that there is no evidence that Plaintiffs specifically complained about this missed payment, nor made Defendant in any way aware of this particular alleged breach. Although Plaintiffs did complain about their royalty payments generally, what complaints Defendant received appear to have been as directed at amount rather than timeliness, and provide little basis for finding a material breach of the lease.

The Court left open the limited issue of 2008-2012 payments for further briefing, but Plaintiffs have not put forth sufficient evidence to create a material issue of disputed fact as to whether Defendant materially breached the lease through late or missed payments. The Court therefore **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 208). The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: February 14, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE